UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GRAND JURY N-12-1

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 3:12cr40 JBA |
| v. | VIOLATIONS: |
| AMAURY VILLA, | 18 U.S.C. Section 371 (Conspiracy) |
| YOSMANY NUNEZ, a/k/a "El Gato" | 18 U.S.C. Section 659 (Theft from Interstate Shipment) |
| ALEXANDER MARQUEZ, and | |
| RAFAEL LOPEZ, | 18 U.S.C. Section 2314 (Interstate Transportation of Stolen Property) |
| Defendants. | |
| | 18 U.S.C. Section 2 (Aiding and Abetting) |
| | 18 U.S.C. Section 981(a)(1) (Forfeiture) |

*United States District Court, District of Connecticut, FILED AT NEW HAVEN, April 10th, 2014, Roberta D. Tabora, Clerk, By [signature], Deputy Clerk*

SECOND SUPERSEDING INDICTMENT

The Grand Jury charges:

COUNT ONE
(Conspiracy)

1.  From on or about January 7, 2010 to on or about March 19, 2010, in the District of Connecticut and elsewhere, the defendants AMAURY VILLA, YOSMANY NUNEZ, ALEXANDER MARQUEZ and RAFAEL LOPEZ, and a coconspirator known to the Grand Jury, knowingly conspired and agreed with others known and unknown to the Grand Jury:

(a) to transport, transmit, and transfer in interstate commerce from Enfield, Connecticut to Florida, stolen goods, wares and merchandise, that is, pharmaceuticals, valued at $5,000 or more, stolen from the Eli Lilly Company ("Eli Lilly") warehouse and storage facility in Enfield, Connecticut ("the Enfield warehouse"), knowing the same to have been stolen; and

(b) with intent to convert to their own use, to steal, take and carry away from the Eli Lilly Enfield warehouse, pharmaceuticals, valued at $1,000 or more, which were moving as, were a part of, and constituted an interstate shipment of freight.

<u>Manner and Means of the Conspiracy</u>

2. It was part of the conspiracy that one or more of the conspirators prepared to steal, take and carry away pharmaceuticals from the Enfield warehouse by making one or more trips to Connecticut and the area surrounding the Enfield warehouse prior to the theft on March 13-14, 2010.

3. It was further a part of the conspiracy that one or more of the conspirators procured one or more tractor trailer trucks prior to the theft on March 13-14, 2010.

4. It was further a part of the conspiracy that one or more of the conspirators drove a tractor trailer truck to the Enfield warehouse on the night of March 13, 2010.

5. It was further a part of the conspiracy that one or more of the conspirators used tools purchased at a Home Depot in Flushing, New York, on March 12, 2010, to cut a hole in the roof of the Enfield warehouse on the night of March 13, 2010.

6. It was further a part of the conspiracy that one or more of the conspirators entered the Enfield warehouse by descending through the hole that had been cut in the roof.

7. It was further a part of the conspiracy that one or more of the conspirators, once inside the Enfield warehouse, disabled parts of the alarm system.

8. It was further a part of the conspiracy that one or more of the conspirators loaded approximately 49 pallets of pharmaceuticals from the Enfield warehouse into a tractor trailer truck through the loading dock.

9. It was further a part of the conspiracy that one or more conspirators drove the tractor trailer truck from the Enfield warehouse in the early morning hours of March 14, 2010.

10. It was further a part of the conspiracy that after the pharmaceuticals were stolen from the Enfield warehouse, one or more of the conspirators departed Connecticut and took a flight from New York to Florida.

11. It was further a part of the conspiracy that one or more conspirators drove the tractor trailer truck from Connecticut to Florida.

12. It was further a part of the conspiracy that two or more conspirators met and unloaded the tractor trailer truck into Public Storage Units in Doral, Florida.

## Overt Acts

13. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the District of Connecticut and elsewhere:

   a. On or about January 7, 2010, AMAURY VILLA and YOSMANY NUNEZ flew via American Airlines from Miami to LaGuardia Airport in New York.

   b. On or about January 7, 2010, at LaGuardia Airport, AMAURY VILLA rented from Hertz an Infinity QX56 for the period January 7-10, 2010.

   c. On or about January 7, 2010, AMAURY VILLA checked into the Hyatt Regency in Jersey City, New Jersey, where he had a reservation for two rooms.

   d. On or about the night of January 8, 2010, AMAURY VILLA and an unidentified individual checked into the Hyatt Summerfield Suites located in Windsor, Connecticut, where AMAURY VILLA had a reservation for one room.

e.  On or about the night of January 9, 2010, an unidentified individual was captured on surveillance video looking through the front door of the Enfield warehouse.

f.  On or about January 10, 2010, AMAURY VILLA's rented Infinity QX56 was returned to the Hertz office located at LaGuardia Airport.

g.  On or about January 10, 2010, AMAURY VILLA and YOSMANY NUNEZ flew via American Airlines from LaGuardia Airport to Miami.

h.  On or about January 28, 2010, YOSMANY NUNEZ flew via American Airlines from Miami to LaGuardia Airport, arriving in the early morning hours of January 29, 2010.

i.  On or about January 29, 2010, in the early morning hours, at LaGuardia Airport, YOSMANY NUNEZ rented a car from Hertz in the name Yosnany Nunez, although the credit card used to pay the charges was in the name YOSMANY NUNEZ.

j.  On or about January 29, 2010, in the afternoon, YOSMANY NUNEZ returned his Hertz rental car at Bradley Airport in Connecticut and exchanged it for a different rental car from Hertz.

k.  On January 29, 2010, YOSMANY NUNEZ checked in to the Hilton Garden Inn in Springfield, Massachusetts using the name Yosmany Aguilar, although the credit card used to pay the charges was in the name YOSMANY NUNEZ.

l.  On January 31, 2010, YOSMANY NUNEZ checked out of the Hilton Garden Inn in Springfield, Massachusetts.

m.  On January 31, 2010, YOSMANY NUNEZ's rental car was returned at the Hertz office located at Bradley Airport.

4

n.  On or about January 31, 2010, YOSMANY NUNEZ flew via Delta Airlines from Bradley Airport to Fort Lauderdale Airport.

o.  On or about March 12, 2010, RAFAEL LOPEZ and a coconspirator, known to the Grand Jury, used cash to purchase a particular combination of tools at a Home Depot in Flushing, New York.

p.  On or about March 12, 2010, AMAURY VILLA flew via American Airlines from Miami to LaGuardia Airport, arriving in the early morning hours of March 13, 2010.

q.  On or about March 13, 2010, at approximately 1:00 a.m. at LaGuardia Airport, AMAURY VILLA rented a Cadillac Escalade from Hertz.

r.  On or about March 13, 2010, AMAURY VILLA's rented Cadillac Escalade passed through the toll located on the Bronx-Whitestone Bridge at approximately 2:16 a.m. and the toll located at New Rochelle at approximately 2:28 a.m.

s.  On or about March 13, 2010, in the early morning hours, AMAURY VILLA checked into the Hyatt Summerfield Suites in Windsor, Connecticut, where he had a reservation through March 15, 2010.

t.  On or about March 13, 2010, YOSMANY NUNEZ flew via Delta Airlines from Miami via Atlanta to Logan Airport in Boston, arriving in the afternoon of March 13, 2010.

u.  On or about March 13, 2010, at approximately 9:33 p.m., a tractor trailer was driven by ALEXANDER MARQUEZ to the loading dock area of the Enfield warehouse. The same tractor trailer departed from the warehouse at approximately 9:36 p.m.

v. On or about March 13, 2010, between approximately 10:22 p.m. and 10:32 p.m., AMAURY VILLA and a coconspirator, known to the Grand Jury, were captured on surveillance video at the Enfield warehouse looking through the front entrance and through a rear door by the loading dock, and carrying a ladder across the loading dock parking lot.

w. On or about the night of March 13, 2010, continuing into the early morning hours of March 14, 2010, AMAURY VILLA and a coconspirator, known to the Grand Jury, used tools purchased from a Home Depot in Flushing, New York on March 12, 2010, to cut a hole in the roof of the Enfield warehouse.

x. On or about the night of March 13, 2010, continuing into the early morning hours of March 14, 2010, AMAURY VILLA and a coconspirator, known to the Grand Jury, disabled parts of the security system of the Enfield warehouse.

y. On or about the night of March 13, 2010, continuing into the early morning hours of March 14, 2010, two or more coconspirators were present inside the Enfield warehouse and, while inside the warehouse, loaded pharmaceuticals into a tractor trailer truck using the facility's forklift.

z. On or about the night of March 13, 2010, continuing into the early morning hours of March 14, 2010, a conspirator, known to the Grand Jury, touched a water bottle previously stored within the Enfield warehouse and left that empty bottle inside the warehouse after he departed.

aa. On or about the night of March 13, 2010, continuing into the early morning hours of March 14, 2010, RAFAEL LOPEZ was in the vicinity of the Enfield warehouse and communicated by cell phone with a coconspirator who was inside

the warehouse.

bb. On or about March 14, 2010, at approximately 3:40 a.m. surveillance video from a nearby business reflects that a tractor trailer truck was driven away from the area of the Enfield warehouse.

cc. On or about March 14, 2010, AMAURY VILLA checked out of the Hyatt Summerfield Suites, in Windsor, Connecticut.

dd. On or about March 14, 2010, at approximately 11:35 a.m., AMAURY VILLA's rented Cadillac Escalade passed through the southbound toll on the Bronx-Whitestone Bridge.

ee. On or about March 15, 2010, in the early morning hours, AMAURY VILLA flew from LaGuardia Airport to Miami.

ff. From on or about March 14 to on or about March 15, 2010, ALEXANDER MARQUEZ drove the tractor trailer containing the stolen pharmaceuticals from Connecticut to Florida.

gg. On or about March 14, 2010, YOSMANY NUNEZ purchased a ticket to fly on the evening of March 14, 2010, via Airtran Airlines, from Baltimore-Washington International Airport in Maryland to Fort Lauderdale Airport in Florida.

hh. From on or about March 16 to on or about March 19, 2010, AMAURY VILLA, YOSMANY NUNEZ and ALEXANDER MARQUEZ, and a coconspirator known to the Grand Jury, met in Florida, unloaded the stolen pharmaceuticals from the tractor trailer and stored them in a Public Storage facility in the Miami area.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
(Theft from Interstate Shipment)

14. From on or about March 13 to on or about March 14, 2010, in the District of Connecticut and elsewhere, the defendants AMAURY VILLA, YOSMANY NUNEZ, ALEXANDER MARQUEZ and RAFAEL LOPEZ, and a coconspirator known to the Grand Jury, knowingly and with intent to convert to their own use, did steal and take and carry away from the warehouse and storage facility of the Eli Lilly Company in Enfield, Connecticut, approximately 75 units of Zyprexa Zydis Tab 20MG X 30SACH AM, product number TA4456V58AM, valued at $1,000 or more, which were moving as, were a part of, and constituted an interstate shipment of freight from the Eli Lilly Company in Plainfield, Indiana, via the Enfield, Connecticut warehouse, to Bethlehem, Pennsylvania, Glen Allen, Virginia, and Morrisville, North Carolina.

In violation of Title 18, United States Code, Sections 659 and 2.

## COUNT THREE
(Theft from Interstate Shipment)

15. From on or about March 13 to on or about March 14, 2010, in the District of Connecticut and elsewhere, the defendants AMAURY VILLA, YOSMANY NUNEZ, ALEXANDER MARQUEZ and RAFAEL LOPEZ, and a coconspirator known to the Grand Jury, knowingly and with intent to convert to their own use, did steal and take and carry away from the warehouse and storage facility of the Eli Lilly Company in Enfield, Connecticut, approximately 218 units of Zyprexa Tab 20MG X 30BOTL AM, product number TA4420030AM, valued at $1,000 or more, which were moving as, were a part of, and constituted an interstate shipment of freight from the Eli Lilly Company in Plainfield, Indiana,

via the Enfield, Connecticut warehouse, to Bethlehem, Pennsylvania, Altoona, Pennsylvania, and Glen Allen, Virginia.

In violation of Title 18, United States Code, Sections 659 and 2.

## COUNT FOUR
(Theft from Interstate Shipment)

16. From on or about March 13 to March 14, 2010, in the District of Connecticut and elsewhere, the defendants AMAURY VILLA, YOSMANY NUNEZ, ALEXANDER MARQUEZ and RAFAEL LOPEZ, and a coconspirator known to the Grand Jury, knowingly and with intent to convert to their own use, did steal and take and carry away from the warehouse and storage facility of the Eli Lilly Company in Enfield, Connecticut, approximately 29 units of Prozac Pulv 20MG X 30BOTL DP, product number PU3105030DP, valued at $1,000 or more, which were moving as, were a part of, and constituted an interstate shipment of freight from the Eli Lilly Company in Plainfield, Indiana, via the Enfield, Connecticut warehouse, to Bethlehem, Pennsylvania and Morrisville, North Carolina.

In violation of Title 18, United States Code, Sections 659 and 2.

## COUNT FIVE
(Theft from Interstate Shipment)

17. From on or about March 13 to March 14, 2010, in the District of Connecticut and elsewhere, the defendants AMAURY VILLA, YOSMANY NUNEZ, ALEXANDER MARQUEZ and RAFAEL LOPEZ, and a coconspirator known to the Grand Jury, knowingly and with intent to convert to their own use, did steal and take and carry away from the warehouse and storage facility of the Eli Lilly Company in Enfield, Connecticut, approximately 60 units of Gemzar 1 Gram Vials, product number VL7502001AM, valued at $1,000 or more, which were moving as, were a part of, and constituted an interstate shipment of freight from the Eli Lilly

Company in Plainfield, Indiana, via the Enfield, Connecticut warehouse, to Bethlehem, Pennsylvania, Glen Allen, Virginia, and Morrisville, North Carolina.

In violation of Title 18, United States Code, Sections 659 and 2.

## COUNT SIX
(Interstate Transportation of Stolen Property)

18.   From on or about March 14, 2010 through on or about March 20, 2010, in the District of Connecticut and elsewhere, the defendants AMAURY VILLA, YOSMANY NUNEZ, ALEXANDER MARQUEZ and RAFAEL LOPEZ, and a coconspirator known to the Grand Jury, did unlawfully transport, transmit, and transfer in interstate commerce from Enfield, Connecticut to Florida, stolen goods, wares and merchandise, that is, pharmaceuticals stolen from the Eli Lilly facility at 150 Freshwater Boulevard, Enfield, Connecticut, valued at $5,000 or more, knowing the same to have been stolen.

In violation of Title 18, United States Code, Sections 2314 and 2.

## FORFEITURE ALLEGATION

Upon conviction of one or more of the offenses alleged in Count Two though Six of this Indictment, the defendants AMAURY VILLA, YOSMANY NUNEZ, ALEXANDER MARQUEZ and RAFAEL LOPEZ shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all right, title, and interest in any and all property, real or personal, that constitutes or is derived from proceeds traceable to violations of Title 18, United States Code, Section 659 and 2314, and a sum of money equal to the total amount of proceeds obtained as a result of the offenses.

If any of the above-described forfeitable property, as a result of any act or omission of the defendants, cannot be located upon the exercise of due diligence, has been transferred, sold to, or

deposited with a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of said defendants up to the value of the forfeitable property described above.

All in accordance with Title 18, United States Code, Section 981(a)(1), as incorporated by Title 28, United States Code, Section 2461(c), and Rule 32.2(a), Federal Rules of Criminal Procedure.

A TRUE BILL

/S/
FOREPERSON

UNITED STATES OF AMERICA

*(signature)*
MICHAEL J. GUSTAFSON
ATTORNEY FOR THE UNITED STATES,
ACTING UNDER AUTHORITY CONFERRED BY 28 U.S.C. § 515

*(signature)*
ANASTASIA E. KING
ASSISTANT UNITED STATES ATTORNEY

*(signature)*
DOUGLAS MORABITO
ASSISTANT UNITED STATES ATTORNEY