IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

No. 3:12CR40 (JBA)

UNITED STATES OF AMERICA )
                                              )
        Plaintiff,           )
   v.                                  )
                                              )
AMAURY VILLA,                  )
                                              )
        Defendant.         )
_____)

## AFFIDAVIT OF THOMAS D. CASSON

**Thomas D. Casson**, being duly sworn deposes and says:

1. I am over eighteen years of age and currently hold the title of Commercial Property and Energy, NGA Lead, VP at AIG Property Casualty.

2. At all times relevant herein, my title was the Head of Energy and Engineered Risk Claims, Zonal Vice President for The Americas.

3. I was responsible for supervision and management of the claim submitted by Eli Lilly and Co for the Pharmaceutical theft loss sustained its Enfield, Connecticut distribution warehouse.

4. I submit this Affidavit in support of the Motion to Quash Defendant's Subpoena Served on third party National Union Fire Insurance Company of Pittsburgh, Pa. dated July 17, 2014 annexed hereto as Exhibit A.

5. I make this Affidavit based on my personal knowledge and based upon my understanding of the file that was maintained under my supervision.

6. Based upon National Union's analysis and investigation of the claim submitted, Eli Lilly was caused to suffer damage and loss in excess of $78,059,578.00 consisting of property damage and inventory loss, related overhead and extra expenses as a result of the March 2010 burglary. (See, Forensic accounting spreadsheet annexed hereto as Exhibit B).

7. The National Union policy of insurance issued to Eli Lilly provided reimbursement for contractually defined losses sustained as a result of contractually defined occurrences.

8. Pursuant to National Union's policy of insurance, after arbitrating the obligations under the policy, National Union reimbursed Eli Lilly $ 42,118,354.00 for the portions of the harm suffered as a result of the March 2010 burglary that were determined to be covered under the contract's language.

9. Therefore, by virtue of the $ 42,118,354.00 in payments tendered to Eli Lilly which partially reimbursed Eli Lilly for the damages it suffered, National Union *in addition* to Eli Lilly has a right, title or claim in law and equity to any award of restitution for those sums paid. Thus, under 18 U.S.C §§ 3771 and 3663 (a) National Union constitutes a victim entitled to restitution under 18 U.S.C. § 3663(a)

10. During the investigation of this claim, on March 17, 2010, Eli Lilly issued a statement regarding the inventory stolen from the Enfield Facility.

11. Eli Lilly explained that the stolen pharmaceutical products were marked with batch/lot numbers and were part of a larger batch/lot. In addition to the burglarized Enfield location, the same batch / lot numbered Inventory were stored in their Fresno CA. and Plainfield IN distribution centers. Lilly's estimate of the inventory of pharmaceuticals that were marked with the same batch/lot numbers as the stolen pharmaceutical products valued in excess of $83 million.

12. The total loss presented to its insurers by Lilly under its Policy in relation to the theft ("Claim") was $78,753,475.00 and included:

    - $48,793,985 million of **stolen** pharmaceutical products;

    - $3,035,541 of physically **damaged** pharmaceutical products; *i.e.* pharmaceutical products stored in the Enfield Facility that were damaged during the theft and left behind;

    - **$26,230,052 million** of pharmaceutical products stored at the Enfield, Plainfield and Fresno Facilities that share the same batch/lot number as the stolen pharmaceutical products and that Lilly claims **could not** be re-worked and distributed and are therefore a loss to Eli Lilly;

    - $693,897 for claimed expediting expense and extra expenses incurred related to "reworking" product, backorders and overtime charges incurred to manufacture additional product to meet demand, and freight charges for **substitute** products to be shipped from Plainfield, PA to East Coast customers. See, Exhibit B annexed hereto.

13. National Union interpreted its policy of insurance to be answerable for $42,118,354.00 of the damages sustained by Eli Lilly as a result of the burglary.

14. National Union and Eli Lilly agreed that their existed an unresolved dispute over the interpretation of coverage for approximately $26 mm of additionally suffered damages.

15. The parties agreed to submit their dispute as to the policy's responsibility to reimburse Eli Lilly for the $26mm portion of Eli Lilly's remaining damages to binding arbitration.

16. The award of arbitration found that National Union was not obliged to reimburse Eli Lilly for the remaining disputed $26mm of damages suffered as a result of the Enfield, CT burglary.

Dated: July 24, 2014

Thomas Casson

New York, New York

Subscribed and sworn to before me at AIG Office of Thomas Casson this 24th day of July, 2014.

NOTARY PUBLIC
My Commission Expires

ELISA T. GILBERT
NOTARY PUBLIC, STATE OF NEW YORK
Registration No. 02GI5042582
Qualified in New York County
Commission Expires Aug 2, 2015